UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 08-084 (RMC) |
| v. | : | |
| JAMES SAMPSON, | : | VIOLATIONS: 18 U.S.C. § 2252(a)(1), (b)(1) and § 2256 (Transporting or Shipping Material Involving Sexual Exploitation of Minors); 22 D.C. Code § 3010(b) (Enticing a Child) |

**FILED**
APR 2 1 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## STATEMENT OF OFFENSE

The parties in this case, the United States of America and the defendant, James Sampson, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offenses; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty.

1. On November 6, 2008, a member of the Internet Crimes Against Children Task Force, (hereinafter referred to as UC) was on-line in a location within the District of Columbia and acting in an undercover capacity. The UC, pretending to be a pedophile, entered a Yahoo fetish room using the screen name "daughterlover_maryland". At approximately 3:55 p.m., the defendant, using the screen name "jimbbok" contacted the UC and asked, "how old is your daughter?" The UC responded that he had a 12 year-old daughter. The defendant informed the UC that he also had an interest in "youth" and wanted to engage in sex acts with the UC's 12 year-old daughter.

2. During the course of the conversation, the UC told the defendant that the UC

sometimes engaged with sex with a 11 year-old little girl. The UC then sent a photograph of a clothed prepubescent girl in a bathing suit. The UC also sent to the defendant a photograph of his "12 year-old daughter". After viewing the photograph of the 12 year-old girl, the defendant informed the UC that he would pay the UC $200 if the UC could arrange for him to engage in sex with the 12 year-old girl. Specifically, the defendant told the UC that he would pay $100 if the defendant could perform oral sex on the child, and that he would "pay 3" if he "could do her raw", that is, have sexual intercourse with her without a condom.

3. Over the course of the next two months, the defendant attempted to arrange for the UC to set up a situation where the 12 year-old would be available to defendant for sex. The defendant suggested several times to the UC to bring the child to his residence in Frederick, Maryland when his wife was not at home. Defendant also suggested a scenario where the defendant would travel to the purported home of the UC in Bowie, Maryland.

4. On November 14, 2007, Sampson sent to the UC, from his house in ~~Virginia~~ Maryland, to the UC, via e-mail, a video, which was approximately 55 seconds long, titled "a 5 yr. old getting fucked". The video depicted a female child, approximately five years old, being penetrated by an adult penis.

5. On December 29, 2007, the UC, posing as the 12 year-old, sent an email message to the defendant, telling him that her "daddy" wanted her to e-mail defendant and that she just wanted to say "hi". After receiving that e-mail from the fictional 12 year-old girl, the defendant responded by telling her that he wanted her to come to his house in April, that he would reward her with gifts and presents, and asking her whether she "ever had a cock before". The defendant also told the "child" that he wanted to perform oral sex on her and that he would "take it easy if you let me fuck you".

6. Over the course of the next few days, in an e-mail conversation with the "child", defendant said that he was sending $100 to a mailing address for her and that he would "pay real good to fuck your pussy". Defendant asked the "child" if she would allow him to "fuck" her and "eat your sweet pussy". The defendant informed the UC that he wanted to send money directly to the child. The defendant then sent an e-mail to the "child" stating that he was sending a small amount of money and asking her again to have sex with him and her father. The UC provided the defendant with a post office box address in Virginia.

7. On January 17, 2008, a search warrant was executed at the defendant's house. The defendant was arrested. During the course of the search warrant, defendant's computer was searched. Several images of child pornography were found depicting prepubescent girls.

8. On January 18, 2008, Fairfax County Police officers retrieved a card addressed to the child, from the defendant, from the Virginia mail box address given by the UC. The card contained a $50 dollar bill and note which read:

> *Hope this gets to you. Let me know and I'll send more. Get something nice.*
>
> *Send pics to email.*

The card was signed by "Jim".

JULIEANNE HIMELSTEIN
Assistant United States Attorney

*[signature]*

4-21-08
———————————
Date

THOMAS A. KEY, ESQ.
Attorney for Defendant

*James Sampson*
JAMES SAMPSON
Defendant

4-21-08
———————————
Date

## DEFENDANT'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have discussed it with my attorney, Thomas A. Key, Esq. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 4-21-08                    _James Sampson_
                                 JAMES SAMPSON
                                 Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 4-21-08                    _Thomas Key_
                                 THOMAS A. KEY, ESQ.
                                 Attorney for Defendant William Dulany