UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 08-084 (RMC) |
| | : | |
| JAMES SAMPSON, | : | |
| Defendant. | : | |
| | : | |

GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

## I.    BACKGROUND

The defendant comes before the court to be sentenced pursuant to his guilty plea to one count of Transporting or Shipping Material involving Sexual Exploitation of Minors, in violation of 18 U.S.C. § 2252(a)(1) and (b)(1), and one count of Enticing a Minor, in violation of 22 D.C. Code 3010. The facts underlying these offenses are as follows:

On November 6, 2007, a member of the Internet Crimes Against Children Task Force, (UC), was on-line in a location within the District of Columbia and acting in an undercover capacity. The UC, pretending to be a pedophile, entered a Yahoo fetish room using the screen name "daughterlover_maryland." At approximately 3:55pm, the defendant, using the screen name "jimbbox" contacted the UC and asked, "how old is your daughter?" The UC responded that he had a 12 year-old daughter. The defendant informed the UC that he also had a interest in "youth" and wanted to engage in sex acts with the UC's 12 year-old daughter.

During the course of the conversation, the UC told the defendant that the UC sometimes engaged in sex with an 11 year-old little girl. The UC then sent a photograph of a clothed prepubescent girl in a bath suit. The UC also sent to the defendant, a photograph of his "12 year-old

1

daughter." After viewing the photograph of the 12 year-old girl, the defendant informed the UC that he would pay the UC $200, if the UC could arrange for him to engage in sex with the 12 year-old girl. Specifically, the defendant told the UC that he would pay $100 if the defendant could perform oral sex on the child, and that he would "pay 3" if he "could do her raw," that is, having sexual intercourse with her with out a condom.

Over the course of the next two months, the defendant attempted to arrange for the UC to set up a situation where the 12-year-old would be available to Sampson for sex. The defendant suggested several times to the UC to bring the child to his residence in Frederick, Maryland when his wife was not home. Sampson also suggested a scenario where the defendant would travel to the purported home of the UC in Bowie, Maryland.

On November 14, 2007, Sampson sent, via e-mail, to the UC, a video, which was approximately fifty-five seconds long, titled "a 5 yr. old getting fucked." The video depicted a female child, approximately five years old, being penetrated by an adult penis.     On December 29, 2007, the UC, posing as the twelve year-old, sent an email message to the defendant, telling him that her "daddy" wanted her to email the defendant and that she just wanted to say "hi." After receiving that email from the fictional 12 year-old girl, the defendant responded by telling her that he wanted her to come to his house in April, that he would reward her with gifts and presents, and asking her whether she "ever had a cock before." The defendant also told the "child" that he wanted to perform oral sex on her and that he would "take it easy if you let me fuck you."

Over the course of the next few days, in an e-mail conversation with the "child," Sampson said he was sending $100 to a mailing address for her and that he would "pay real good to fuck your pussy." Sampson asked the "child" if she would allow him to "fuck" her and "eat your sweet pussy." The defendant informed the UC that he wanted to send money directly to the child. The defendant

then sent an e-mail to the "child" stating that he was sending a small amount of money and asking her again to have sex with him and her father. The UC provided the defendant with a post office box address in Virginia.

On January 17, 2008, a search warrant was executed at the defendant's house. The defendant was arrested. During the course of the search warrant, the defendant's computer was searched. Eighteen images of child pornography were found depicting prepubescent girls.

On January 18, 2008, Fairfax County Virginia police officers retrieved a card addressed to the child, from Sampson, for the Virginia mail box address given by the UC. The card contained a $50 dollar bill and a note which read: "Hope this gets to you. Let me know and I'll send more. Get something nice. Send pics to email." The card was signed "Jim."

## II.    SENTENCING CALCULATION

### A.    Statutory Maximums

 Count 1:  A violation of Title 18, United States Code, Section 2252(a) carries a minimum sentence of 5 years and a maximum sentence of 20 in prison, a fine of $250,000, and a term of supervised release of between five years and life.  See 18 U.S.C. §§ 2422(b), 3571(b)(3), 3583(k).

Count 2:  A violation of Title 22, D.C. Code, Section 3010 carries a maximum sentence of 5 years in prison[1], a fine of $50,000, and a term of supervised release of between zero and two years. However the Court may impose a longer term of supervised release. See Presentence Report (PSR) ¶64.

### B.    Sentencing Guidelines Calculation

The Guideline calculation in the Presentence Report places the defendant's total offense level at 31 for count 1.  See PSR ¶ 28.  (This calculation contemplates a two level enhancement for

---

[1]A maximum of five years of which no more than three may be imposed at time of sentencing.

3

material involving a prepubescent minor or minor under 12, See PSR ¶16; distribution, See PSR ¶18.A four level enhancement for material that portrays sadistic or masochistic conduct, or other depictions of violence, See PSR ¶19; a two level enhancement for the use of a computer, See PSR ¶20; and a two level enhancement because the offense involved at least 93 images, See PSR ¶21.

With respect to Count two, sentencing guidelines are voluntary. The PSR calculates the defendant's criminal history score as 0, and his criminal history category as I. See PSR ¶ 32. The Guideline range for the defendant is therefore calculated at 101 to 135 months of imprisonment. See PSR ¶ 60.

## III.     GOVERNMENT'S RECOMMENDATIONS

For the reasons set forth below, the government respectfully recommends that the Court sentence the defendant on Count one, to 108 months of imprisonment, and on Count two, impose a term of prison for three years to run concurrent to the federal offense. This sentence satisfies the requirements set forth in Title 18, United States Code, Section 3553(a).

A.     Acceptance of Responsibility

The defendant does accept responsibility for his conduct underlying the charges for which he has been convicted. See PSR ¶ 12.

B.     Application of the Federal Guidelines post-*Booker*

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1).  Booker, 125 S. Ct. at 756.

4

Nonetheless, and as the Supreme Court stated as recently this Monday, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, 128 S.Ct.586 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). The district court should then consider all of the applicable factors set forth in Title 18 United States Code, Section 3553(a). See id. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. See United States v. Rita, 127 S.Ct. 2456 (2007). The Guidelines represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission");

Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). And the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766-67 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by Section 3553(a)(1). Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be based on the offender's actual conduct and history, and that sentenced be uniform across the country, to the extent possible. See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 ("Congress' basic statutory goal – a system that diminishes sentencing disparity – depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.")

The Guidelines themselves thus seek to implement – in a fair and uniform way – the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme

Court commends in <u>Gall</u>. <u>See</u> <u>Gall</u>, at * 7. It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by the district court. In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for Guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the applicable Guidelines range to 151 months of imprisonment, which will effectuate the requirements set forth in Section 3553(a).

   C.  Basis for Government's Sentencing Recommendation

 The government is requesting a sentence within the defendant's Guidelines range. Such a sentence is more than supported by: (1) the facts surrounding defendant's offenses, and (2) the risk of danger to children and the community that the defendant's sexually predatory conduct poses.

 The government submits that the defendant is a danger to children in the community. The defendant appear to possess an unusual sexual preference for small children. As the defendant's online conversation with the undercover officer makes clear, the defendant who was interested in the UC's 12 year-old daughter, informs the UC that he has engaged in sex with an 11 year-old little girl. After viewing the picture of the UC's purported daughter, defendant offered the UC $200 to have sex with her. Defendant also made it clear that he would even pay more if he could "do her raw," that is, have sex without a condom. The defendant then suggested several times that the UC bring the little girl to his home in Frederick, Maryland when his wife was not home. This behavior is not only disturbing, but clearly shows that the defendant is a danger to children. Indeed, when in December, 2007, the UC posed as the little girl and e-mailed the defendant to say "hi," the defendant responded by telling her he wanted her to come to his house, that he would reward her with gifts and presents and asked her if she "even had cock before." The defendant told the little girl that he would "take it easy if you let me fuck you." The fact that the defendant then sent a card and money to the

7

little girl so that he could, in the defendant's words, "fuck" her, and "eat her sweet pussy," is overwhelming evidence of the defendant's danger to children.

## IV.   <u>CONCLUSION</u>

Wherefore, the government respectfully requests that the Court sentence the defendant to 108 months on Count One  plus three years on the D.C. Code offense to run concurrently with the federal offense.

Respectfully submitted,

JEFFERY A . TAYLOR
United States Attorney
Bar No. 498610


_____/s/_____
JULIEANNE HIMELSTEIN
Assistant United States Attorney
Federal Major Crimes Section
D.C. Bar No. 417-136
555 4th Street, N.W.
Washington, DC 20001
Phone: 514-8203
Fax: 514-6010